# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM TENNIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:13-CV-02277 |
| ) | Judge Fowlkes, Jr. |
| UNITED PARCEL SERVICE, INC., ) | Magistrate Pham |
| JIM COCHRAN, and MICHAEL ) | |
| SLABAUGH, ) | |
| ) | |
| Defendants. ) | |

## UPS'S STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with Local Rule 56.1(a), Defendant United Parcel Service, Inc. ("UPS") submits this statement of undisputed material facts:

1. UPS hired Plaintiff in 1978 and later promoted him into various management positions in Tennessee as a Full-Time Supervisor and Business Manager. Plaintiff has substantial experience in UPS's Hub and Package operations. (Deposition of William Tennial ("Tennial Dep.") at 37, 40-41; Exhibit 1).

   **RESPONSE:**


2. Throughout his career, Plaintiff has been trained on UPS's human resources policies, including its policies prohibiting discrimination, harassment, and retaliation (Declaration of Harry Wilson ("Wilson Dec.") at ¶ 23).

   **RESPONSE:**

3. Plaintiff has also been trained on UPS's FMLA and ADA policies, and as a member of management, Plaintiff was expected to know and understand these policies so that he could provide direction and advice to his employees should they inquire about them. (Id. at ¶ 24).

**RESPONSE:**


4. In August 2009, Plaintiff was transferred from UPS's Oakhaven Hub operations in Memphis, Tennessee to be the Business Manager for the Walnut Grove Package Center in Memphis, Tennessee. Plaintiff reported to Package Division Manager, James Wherry, who is also African-American. (Tennial Dep. at 52-55; Wilson Dec. at ¶ 4).

**RESPONSE:**


5. While reporting to Wherry, Plaintiff's overall job performance was below UPS's expectations. In 2009, Wherry rated Plaintiff as "Improvement Needed" on his annual performance review. According to Wherry, Plaintiff had safety-compliance issues, and needed to improve his "Days Away, Restricted and Transferred, or "DART." He also rated Plaintiff as "Improvement Needed" in several areas of Plaintiff's leadership competencies, including (1) "set[ting] objectives, prioritiz[ing] work, and develop[ing] plans for work group or project team;" (2) "mak[ing] timely decision and decrib[ing] rationale and implications for moderately complex problems; (3) "identify[ing] own and others' development needs and actively coach[ing] others to develop their skills and abilities." (Tennial Dep., Exhibits 4 and 5).

**RESPONSE:**

6. In 2010, Wherry rated Plaintiff as "Significant Improvement Needed" on his annual performance review. According to Wherry, Plaintiff needed to "get the preload on plan ...[and] work through [his] people to make this happen," and that he had "drop[ped] the ball on [customer service]." (Id. at Exhibit 5).

**RESPONSE:**


7. Wherry also required Plaintiff to submit several write-ups for ongoing performance issues and service failures. (Id. at 78-82, Exhibit 7 [1836-38]).

**RESPONSE:**


8. On November 29, 2010, Plaintiff's sort failed to unload a trailer that contained hundreds of packages in it, resulting in hundreds of service failures. Plaintiff was charged with a "missed load" because he did not ensure that the contents of the trailer were unloaded, sorted, and dispatched as required. (Id.).

**RESPONSE:**


9. On February 23, 2011, Plaintiff was again responsible for several service failures. Specifically, Plaintiff failed to deliver multiple next-day air packages within the commit times for which customers paid and on which they relied. (Id.).

**RESPONSE:**

10. In May 2011, Plaintiff was transferred to the Memphis Twilight Sort to be the Hub Manager, where he reported to Division Manager Richard Williams, who like Plaintiff, is African-American. (Deposition of Richard Williams ("Williams Dep.") at 16-17; Wilson Dec. at ¶ 5).

**RESPONSE:**

11. As the Manager of the Memphis Twilight Sort, Plaintiff failed to: (1) meet the Hub's production goals; and (2) ensure that staff were on plan and used proper sorting methods. (Tennial Dep. at 89, Exhibit 7 [1840]).

**RESPONSE:**

12. In June 2011, Plaintiff acknowledged in writing his "lack of consistent accountability of [his] management team" and his failure to meet key aspects of the Memphis Hub's 2011 business plan. He committed to correcting his lack of leadership and poor service, and acknowledged the potential consequences of a failure to improve his performance. (Tennial Dep. at 84-87, Exhibit 7 [1839]).

**RESPONSE:**

13. On September 9, 2011, Plaintiff was again responsible for over 200 service failures resulting from a missed trailer during his sort. Plaintiff acknowledged, in writing, that these service failures resulted from supervisors not being properly "trained". (Tennial Dep. at 90-91; Wilson Dec. at ¶ 6).

**RESPONSE:**

14. Based on the significance of Plaintiff's service failures, lack of consistent accountability of his management team, and continued failure to meet key aspects of the Memphis Hub's 2011 business plan, Williams gave Plaintiff an overall rating of "Improvement Needed" on his annual performance review, and believed that a performance improvement plan was necessary for Plaintiff. (Tennial Dep. Exhibits 6, 7 [1845]; Williams Dep. at 35).

**RESPONSE:**


15. In January 2012, Williams retired from UPS, creating a vacancy. Shortly thereafter in February 2012, UPS transferred Jim Cochran ("Cochran") from his position as a Division Manager in South Carolina to the position of Hub Division Manager for the Memphis Division, which Williams had vacated. (Deposition of Jim Cochran ("Cochran Dep.") at 56, 60-61).

**RESPONSE:**


16. Cochran learned from other managers in district that Williams had been preparing to place Plaintiff on an MPIP immediately prior to Williams' retirement; however Cochran wanted to base any potential steps to address Plaintiff's performance on his own assessment, not just the observations of a previous Division Manager. Accordingly, Cochran put the improvement process for Plaintiff on hold while he monitored all of the managers under his supervision. (Cochran Dec. at ¶¶ 9-10).

**RESPONSE:**

17. From March 2012 to April 2012, Cochran monitored Plaintiff's performance, as he did for all of the managers now under his supervision, and determined that Plaintiff was performing below UPS's standards, and was not improving. (Id. at ¶ 10; Tennial Dep., Exhibits 10-17).

**RESPONSE:**

18. When Cochran would walk through the Memphis Building with Plaintiff during the Twilight Sort, he noted that Plaintiff would not address issues with his supervisors, and even after Cochran would coach him, Plaintiff would not implement that feedback. (Cochran Dec. at ¶ 11).

**RESPONSE:**

19. On April 10, 2012, Cochran, in consultation with District Hub Operations Manager Mike Slabaugh ("Slabaugh") and District Human Resources Director Harry Wilson ("Wilson") placed Plaintiff on an MPIP. (Cochran Dec. at ¶¶ 12, 16; Wilson Dec. ¶ 11).

**RESPONSE:**

20. Wilson, like Plaintiff, is African-American. (Wilson Dec. at ¶ 1).

**RESPONSE:**

21. Cochran concluded that an MPIP was appropriate because Plaintiff: (1) continued to perform below UPS standards by failing to meet the Hub's business plan; (2) failed to hold his subordinates accountable as instructed by Cochran; (3) had the propensity for additional serious service failures. (Cochran Dec. at ¶¶ 10, 12).

**RESPONSE:**

22. Cochran then determined what Plaintiff's MPIP goals and objectives would be, narrowing it down to three categories: (1) Hub PPH; (2) DART; and (3) Percent Smalls Bagged. (Cochran Dec. at ¶ 13).

**RESPONSE:**

23. On April 10, 2012, Plaintiff met with Cochran and Wilson for his initial MPIP meeting, wherein Cochran outlined the areas for improvement and specific goals Plaintiff needed to meet. Plaintiff was warned that the failure to successfully complete the MPIP could lead discipline, up to and including discharge. (Tennial Dep. at 136-37, Exhibit 18; Cochran Dec. at ¶ 16).

**RESPONSE:**

24. Plaintiff acknowledged that he was not meeting the minimum performance standards required for his position because: (1) "observations [were] not being performed or followed up on;" (2) "[quality improvement process] plans [were] insufficient to direct the operations to achieve plan. Daily management of [operating plans] [was] not adequate to ensure success;" and (3) "small sort performance [was] not adequate to allow for available smalls to be

processed." Plaintiff committed, in writing, to: (1) reducing his DART Frequency to 3.9 for the combined months of April and May; (2) increasing the Hub's PPH to achieve three consecutive months above business plan; and (3) improving Percent Smalls Bagged to 90%. Plaintiff agreed to these MPIP goals and acknowledged that they were reasonable and appropriate. (Tennial Dep. at 138-46, Exhibit 18).

**RESPONSE:**

25. During the MPIP process, Plaintiff failed overall to meet his performance expectations:

| Performance Expectation (April 10, 2012) | Progress Report #1 (May 22, 2012) | Progress Report #2 (June 22, 2012) | Progress Report #3 (July 24, 2012) |
|---|---|---|---|
| DART Frequency | No | Yes | Yes |
| Hub PPH | No | No | No |
| Percent Smalls | No | No | No |

(Tennial Dep. Exhibits 25, 26, 27, 28; Wilson Dec. at ¶ 14, Exhibit A; Cochran Dec. at ¶ 20, Exhibit B).

**RESPONSE:**

26. On July 24, 2012, Cochran, Wilson, and Slabaugh conducted a final MPIP review meeting with Plaintiff. Plaintiff acknowledged that: (1) "employees have not been [monitored] multiple times to … improve their poor performance;" (2) he was not "follow[ing] up [with supervisors] like [he] should have;" and (3) he "failed to hold [his] direct reports accountable for doing their jobs on a daily basis." (Tennial Dep. at 188-90, 193, Exhibits 27, 28).

**RESPONSE:**

27.     Based on Plaintiff's failure to achieve the performance expectations outlined in the MPIP, Cochran recommended Plaintiff's demotion to Slabaugh and Wilson in late July 2012. Slabaugh and Wilson agreed with Cochran's recommendation.  (Cochran Dep. at 54, 71-72; Wilson Dec. at ¶ 15; Cochran Dec. at ¶ 21).

**RESPONSE:**

28.     On July 26, 2012, UPS demoted Plaintiff for failing to successfully complete his MPIP.  (Wilson Dec. at ¶ 16; Cochran Dec. at ¶¶ 21, 25).

**RESPONSE:**

29.     Plaintiff never complained to his managers or anyone in Human Resources or otherwise about race, age, and/or disability discrimination.  (Tennial Dep., Exhibit 9; Wilson Dec. at ¶ 19; Cochran Dec. at ¶ 17).

**RESPONSE:**

30.     Neither Cochran, Slabaugh, nor Wilson made any race and/or age-based inappropriate comments or jokes to Tennial or anyone else in his presence.  (Tennial Dep. at 107-09, 230-32).

**RESPONSE:**

31.     In September 2011, Plaintiff requested, and was granted, FMLA leave through January 2012.  (Id. at 210-12).

**RESPONSE:**

32. In October 2012, Plaintiff requested, and was granted, FMLA leave through March 27, 2013. (Id.).

**RESPONSE:**

33. Plaintiff has never been denied FMLA leave while employed with UPS, nor has he ever heard a management employee say "anything specifically negative about his FMLA requests." (Id.).

**RESPONSE:**

34. Plaintiff never advised anyone in management or Human Resources that he had a disability. (Id.).

**RESPONSE:**

35. Cochran, Slabaugh, and Wilson were unaware that Plaintiff had been treated for anxiety or depression, or that he claimed that he had any condition that could constitute a disability. (Slabaugh Dec. at ¶¶ 3-4; Cochran Dec. at ¶¶ 23-24; Wilson Dec. at ¶¶ 17-18).

**RESPONSE:**

36. No member of management or Human Resources perceived Plaintiff as having a disability. (Id.).

**RESPONSE:**

        s/ Aron Z. Karabel
        Waverly D. Crenshaw, Jr.
        John E. B. Gerth
        Aron Z. Karabel
        WALLER LANSDEN DORTCH & DAVIS, LLP
        511 Union Street, Suite 2700
        Nashville, Tennessee 37219-8966
        615-244-6380
        615-244-6804 (facsimile)
        email: waverly.crenshaw@wallerlaw.com
                jeb.gerth@wallerlaw.com
                aron.karabel@wallerlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing has been served via the Court's CM/ECF system upon:

Luther Sutter
Sutter & Gillham, PLLC
P.O. Box 2012
Benton, AR 72018

Andrew C. Clarke
6250 Poplar Avenue
Second Floor
Memphis, TN 38119

on this 24th day of November, 2014.

        s/ Aron Z. Karabel